## Coffey Estate

*John H. Neeson, Jr.,* for accountants.

*Leon H. Kline,* for claimants.

*Alfred D. Whitman,* for Commonwealth.

LEFEVER, J., February 26, 1958.—Margaret Z. Coffey died October 1, 1955, having first made a will, dated December 14, 1939, and codicil thereto, dated December 21, 1948, of which she appointed Anna Fagan Walker and J. Vincent Brophy, executors, to whom letters testamentary were granted October 27, 1955.

Testatrix bequeathed and devised the balance of residue of her estate "to be distributed to the following named persons:

"One-fourth (1/4th) thereof unto Mrs. Maggie (Hughes) Shinn, National Park, New Jersey; One-fourth (1/4th) thereof unto Nonie (Hughes) Stadtler, 1336 Jackson Street, Camden, New Jersey; Three-tenths (3/10th) thereof to Anna (Fagan) Walker of Philadelphia; One-fifth (1/5th) thereof to Jane Coffey (possibly now married, if so, married name not known), being the daughter of Joseph Coffey, now deceased."

Testatrix provided further that in the event any of the above named beneficiaries of her residuary estate predeceased her, the share of the one so dying was to fall back into the residue and be distributed as part thereof to the surviving benficiaries above named in the same proportion as indicated . . .

The addendum annexed to paragraph (*j*) of the statement of proposed distribution sets forth that no share has been assigned or attached, except as follows:

"By Jane Coffey Marko to Samuel Cohen—$1500.00 —Dec. 10, 1956 (Reassigned by Samuel Cohen to Annette Ozeroff—Feb. 18, 1957). By Jane Coffey Marko to Samuel Cohen—$1500.00—Feb. 14, 1957. By Jane Coffey Marko to Samuel Cohen—$1000.00—April 2, 1957. (Reassigned by Samuel Cohen to David Tonkin —April 8, 1957). Advanced to Jane Coffey Marko— $100.00 by Samuel A. Cohen per letter dated April 15, 1957. Advanced to Jane Coffey Marko—$100.00 by Samuel A. Cohen per letter dated May 3, 1957."

At the audit on January 8, 1958, Jane Coffey Marko testified that in December 1956, her husband was out of work and that she and her family of 12 children were badly in need of funds. She did not realize that the estate was ripe for a final account or audit, nor that the principal asset of the estate was a savings

account containing thirty odd thousand dollars from which the accountant could readily have made an advance on account of her distributive share. She saw Mr. Cohen's advertisement, called upon him, and, as a result of that conference, on December 10, 1956, assigned a $1,500 interest in the estate for $750; that on February 14, 1957, she assigned a $1,500 interest to Mr. Cohen for $800; that on April 2, 1957, she assigned a $1,000 interest for $550. She also borrowed $100 from Mr. Cohen April 15, 1957, and a further $100 on May 3, 1957, both of which loans were unsecured and were represented by letters carrying the same dates. Mr. Cohen telephoned the attorney for accountants, ascertained that the interest of Jane Coffey Marko was ample to secure the various amounts as stated above; that there was cash in bank to warrant distribution forthwith and that the accountants expected to file their account very shortly. Accordingly, Mr. Cohen made these advancements to Jane Coffey Marko and took in return therefor the alleged bills of sale stated above. Cohen immediately notified accountants of his claims and the accountants took it upon themselves to advance to Cohen and his assignees the full $4,200 prior to the filing of the account in this estate.

This action upon the part of the executors and the advice of counsel to make such distribution on such an assignment to a notorious money lender is of dubious propriety. This court frowns upon such action. It is well established that an executor makes distribution prior to the audit of his account and the adjudication thereon at his peril. Such precipitous payments not only wrongfully facilitate the nefarious practices of professional money lenders, but also may result in surcharge upon the accountant if the transaction is challenged at the audit.

President Judge Klein, of this court, in the Estate of Mathilde A. Eldridge, deceased, no. 3603 of 1957,

had before him a similar assignment of a share of a legatee in a decedent's estate to the said Samuel A. Cohen. The president judge in adjudication, dated February 3, 1958, set forth succinctly the policy of this court with respect to such matters, as follows:

"On its face this transaction appears to be an instance of a reprehensible practice, which is becoming increasingly prevalent in this community and which has caused the judges of this court great concern. We have been confronted with many cases in which money lenders have taken advantage of needy beneficiaries by lending money at grossly excessive rates of interest and camouflaging the transaction by compelling the borrowers to execute assignments of their beneficial interests.

"In order to curb or, at least, to regulate this practice, the court will insist upon a complete and full investigation of all the circumstances attending all such transactions in the future.

"The accountant is therefore directed to retain the balance due upon the share of the said John Fitch for future accounting so that a complete investigation of this transaction may be made to ascertain whether it was in reality an usurious loan and in violation of the criminal statutes of this Commonwealth."

It appears, however, from the testimony taken in this case that Jane Coffey Marko is sui juris; that of her own free will she executed the bills of sale as stated aforesaid; that she signed documents requesting the accountants to make distribution to Cohen and pursuant thereto and in reliance thereupon the accountants made distribution. The credit therefor in the distribution account is allowed . . .

And now, to wit, February 26, 1958, the account is confirmed nisi.